## LEWIS *v.* STATE.

Opinion delivered February 17, 1906.

1. MOTION FOR NEW TRIAL—SUFFICIENCY.—A ground of a motion for new trial which is not responsive to the ruling of the court complained of, as reflected by the bill of exceptions, will not be considered. (Page 42.)

2. HOMICIDE—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.—Where the State's testimony in a murder case tended to show that defendant was guilty of murder in the second degree, and defendant's testimony that he was not guilty of so high a degree, and the jury found him guilty of murder in the second degree, the verdict will not be disturbed, although the punishment seems severe under the facts disclosed by defendant's testimony, if the State's testimony would have supported a verdict for the higher offense. (Page 42.)

Appeal from Hempstead Circuit Court; *Joel D. Conway,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant was indicted for the crime of murder in the first degree, was tried upon this indictment, and convicted of murder in the second degree, and his punishment fixed at twenty-one years in the penitentiary.

Appellant killed one Carl Michael. He admitted the killing; and, according to appellant's statement, he had been out hunting squirrels, and was returning home, when Michael overtook him. Appellant was afoot, and Michael was on horseback. Michael rode up behind appellant, and told him to hold up. Appellant turned, and saw Michael who passed under a certain haw bush, and came "right up to" appellant, and said to him, "Jett" (using profane language), "you're going to pay me for that lumber." Appellant denied owing him for any lumber. Michael called him a "damned liar," and appellant turned to walk away. Michael told him to hold on. Appellant started to walk away again. Michael said, We are going to settle it now." Appellant turned toward him, and Michael "had his hand in his bosom." Appellant, quoting his testimony, "asked Michael not to do that, but he did not heed me; he put his hand in his bosom, and when he did that, I shot him and ran." Further along in his testimony he says: "About the time that defendant hallooed, I put a shell of large shot into my gun, as I apprehended having trouble." He also shows

that he and Michael were not on good terms; says that Michael and his father had accused him of stealing lumber from them; that this charge was false, and that they had some words about this on the day before the killing at Michael's mill, when he and young Michael came near having a fight. He also told of another occasion, when he and young Michael had some unpleasant words, and Michael had told him on that occasion the following: "You can fix yourself; I will see you later about this." He says that he had been informed afterwards that Michael had said that if appellant did not want to have trouble with him (Michael), appellant had better stay off of the road. He had also heard that Michael had said he was going to whip appellant the first opportunity.

The theory of the State was that appellant had killed Michael by lying in wait on the roadside behind a log, and had fired upon him from ambush. There was testimony on behalf of the State that tended to support this theory.

On behalf of the State one W. W. Michael, the father of deceased, testified without objection as follows: "On the day before the killing the defendant came over to our mill in response to my request. I asked him how it was that the lumber I had missed was traced to his possession, and he said he didn't put it there. I told him that two parties had told me that they saw him take it, and one told me that he had found it in his possession. He said he didn't put it there; and if he did, he didn't give a damn. The deceased, who was twenty-five or thirty feet away, replied, "That would show your disposition." Defendant said, "You come up the road, and I'll fix you!"

Cross-examination. "Mr. Tiner told me where the missing lumber was concealed, and I found it under a tree top, near defendant's building.

The bill of exceptions recites: "The defendant asked to introduce George Green on the proposition of having been with Jett Lewis the day the lumber was missing, and the court refused to allow the testimony introduced, and defendant excepted."

The motion for new trial contains the following:

"11. That the court erred in refusing to allow the witness George Green, introduced on behalf of the defendant, to testify in relation to certain lumber claimed to have been stolen by said

defendant from the deceased and his father, which said testimony was in direct rebuttal of the testimony of witness W. W. Michael, who had testified on behalf of the State that he had found the said lumber in the possession of the defendant, and whose testimony was prejudicial to the defendant, if not rebutted and unexplained, and that the said testimony of said George Green was admissible and relevant to the issue, and was material to the issue in this case."

*Jobe & Eakin,* and *C. C. Hamby,* for appellant.

*Robert L. Rogers, Attorney General,* for appellee.

WOOD, J., (after stating the facts.) We find no reversible error in the instructions of the court. They cover the various phases of the evidence, and are in accord with principles announced in many decisions of this court. We find it unnecessary to review them critically, for the reason that appellant's own evidence, we think, would fully justify the jury in returning against him a verdict for murder in the second degree.

2. The refusal of the court to permit appellant "to introduce George Green on the proposition of having been with Jett Lewis[ the appellant] the day the lumber was missing" was not error. It had no connection whatever with the case, in the form presented. The fact of George Green having been with the appellant on the day the lumber was missing throws no light, that we can see, upon the fatal rencounter. Moreover, if this were error, it is not preserved in the motion for new trial. For the 11th ground of the motion is the only one that calls attention to the refusal of the court to allow George Green to testify, and it is not responsive to the ruling of the court as reflected by the bill of exceptions.

If appellant were only guilty of murder in the second degree, as the jury finds, the punishment seems severe under the facts as disclosed alone by his testimony, but we have not been asked, and do not feel at liberty, to reduce the punishment, since we would not have disturbed a verdict for a higher degree.

Affirmed.